## State Employees Retirement Board Investments

KANE, *Attorney General,* LILIEN, *Deputy Attorney General,* and YAKOWICZ, *Solicitor General,* April 5, 1978—You have requested advice as to whether the State Employees' Retirement Board has the legal authority to "split" or reassign to other money managers the assets accumulated or to be accumulated in the retirement system presently managed by Mellon Bank, N.A. You also requested advice as to the guidelines under which such reassignment may occur to insure that the proposed splitting of assets be in accordance with appropriate legal and financial standards.

Without passing on the wisdom or desirability of diversifying the portfolio assets, it is our opinion and you are so advised that the State Employees' Retirement Board has the authority to "split," diversify and reallocate assets of the State Employees' Retirement System in accordance with the legal principles set forth below.

The State Employees' Retirement Board is a

statutory creation and has been the administrative agency charged with the responsibility of supervising the State Employees' Retirement System since its inception in 1923. By specific legislation, enacted on March 1, 1974, P.L. 125, 71 Pa.C.S.A. §5101 et seq., the board was made an independent administrative agency consisting of seven members, including the state treasurer, ex officio: section 5901. The crucial provision, for purposes of the request for advice is section 5931, which clearly and unambiguously provides that: "(a) The members of the board shall be the trustees of the fund and shall have exclusive control and management of said fund and full power to invest same, subject, however, to all the terms, conditions, limitations and restrictions imposed by this code or other law upon the making of investments." This authority includes the power to "hold, purchase, sell, assign, transfer or dispose" of any portfolio assets. This provision is a substantial reenactment of section 502 of the June 1, 1959 Retirement Code, P.L. 392, as amended, 71 P.S. §1725-502.

One need not look further than this provision to conclude that the exclusive authority to control and manage the fund rests solely with the board, in its trustee capacity, subject to the limitations contained in the act, such as limits on the percent of preferred and common stock in the portfolio: §5931(h), and limits on the types of fixed income assets which may be purchased: Act of April 25, 1929, P.L. 723, as amended, 72 P.S. §3603.

This management authority is always subject to the standards of diligence and prudence in the making, holding, investing and liquidating of such assets. The policy decision of the board, as reflected in

its intention to diversify its portfolio, among several, as distinguished from one, money managers may be accomplished through a variety of methods. It is clear, however, that the decision to "split" the fund is a matter of policy for the board to make, given the clear statutory authority to exclusively control and manage the portfolio in its fiduciary capacity. The board must keep in mind the aforementioned investment limitations in addition to its responsibility to "exercise . . . that degree of judgment and care under the circumstances then prevailing which men of prudence, discretion and intelligence exercise in the management of their own affairs not in regard to speculation, but in regard to the permanent disposition of the funds, considering the probable income to be derived therefrom as well as the probable safety of their capital." §5931(h)(1).

Accordingly, it is our opinion and you are so advised that the board may "split," diversify or reallocate assets among several money managers subject however to the board's role as trustee and the investment limitations imposed by law. This opinion is not intended to approve either the decision of the board to diversify or the identity of any proposed money manager. It would be sufficient to state that the board has the legal right to diversify, however, subject to the requirement that such diversification be undertaken in a reasonable and prudent manner. We would expect that the board has sought objective professional advice concerning the reallocation of the portfolio assets including the qualifications and experience of the proposed managers. In any event, the final responsibility and accountability for the decisions made by the board rests solely with the board.